IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JOETTA BROOKS,                          )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )          CIVIL ACTION NO. 5:05-00821
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )

MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on

the Plaintiff's Motion for Summary Judgment (Document No. 16.) and the Defendant's Motion for

Judgment on the Pleadings. (Document No. 17.) Both parties have consented in writing to a decision

by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Joetta Brooks (hereinafter referred to as "Claimant"), filed an application for

SSI on August 15, 2002 (protective filing date), alleging disability as of June 1, 2001, due to anxiety,

depression, and nerves. (Tr. at 71, 72-74, 90.) The claim was denied initially and upon

reconsideration. (Tr. at 53-55, 59-60.) On April 3, 2003, Claimant requested a hearing before an

Administrative Law Judge (ALJ). (Tr. at 61.) The hearing was held on August 12, 2003, before the

Honorable David S. Antrobus. (Tr. at 254-66.) By decision dated September 23, 2003, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 43-52.) On October 1, 2003, Claimant

requested review of the ALJ's decision. (Tr. at 65.) By Order dated November 25, 2003, the Appeals

Council granted Claimant's request and remanded the matter to the ALJ for further proceedings. (Tr.

at 66-69.) The Appeals Council directed the ALJ on remand to obtain additional evidence concerning Claimant's impairments, further evaluate Claimant's mental impairments in accordance with the special technique, give further consideration to Claimant's maximum residual functional capacity and provide appropriate rationale supporting the assessed limitations, and obtain supplemental evidence from a vocational expert. (Tr. at 68.)

A supplemental hearing was held on February 15, 2005, and additional evidence was received into the record. (Tr. at 247-53.) By decision dated June 24, 2005, ALJ Antrobus determined that Claimant was not entitled to benefits. (Tr. at 12-18.) The ALJ's decision became the final decision of the Commissioner on August 23, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On October 11, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to

2

Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, June 1, 2001. (Tr. at 17, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from an affective disorder, an anxiety disorder, and dizziness, which were severe impairments. (Tr. at 17, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity for work at the medium level of exertion, as

---

in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

5

follows:

> She is able to lift/carry 50 pounds; stand/walk for six hours of an eight-hour workday; sit for six hours of an eight-hour workday; and perform jobs not requiring complex or detailed job tasks.

(Tr. at 17-18, Finding No. 5.) At step four, the ALJ found that Claimant had no past relevant work experience. (Tr. at 18, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cleaner, food prep worker, and laundry worker. (Tr. at 17-18, Finding No. 10.) On this basis, benefits were denied. (Tr. at 18, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

6

Claimant's Background

Claimant was born on February 18, 1954, and was 51 years old at the time of the administrative hearing. (Tr. at 17, 72, 156.) Claimant had a ninth grade, or limited, education. (Tr. at 17, 96, 257.) She had no past relevant work experience. (Tr. at 16, 91, 250.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will summarize the medical evidence briefly below as it pertains to Claimant's mental impairments, and further will discuss the evidence below in relation to Claimant's arguments.

Claimant sought treatment from New River Health Care Association, Inc., from May 28, 2002, through December 27, 2004. (Tr. at 129-50, 185-92, 196-202, 203-19.) Claimant initiated treatment on May 28, 2002, for prior diagnoses of chemical imbalance, depression, and anxiety. (Tr. at 150.) Claimant reported that she was unable to work due to anxiety but that she cared for an eighty-four year old man in exchange for room and board, plus $150.00 per month. (Tr. at 149.) On mental status exam, Claimant was moderately anxious, had an appropriate affect, and appeared distracted and forgetful. (Tr. at 150.) She was diagnosed with depression and anxiety and referred to Dr. Ahmed or Debra Mooney for treatment. (Id.)

Claimant had a psychiatric follow-up visit on July 25, 2002, at which time she reported that the Wellbutrin and Paxil helped to relieve some of the depression, but not the anxiety, and that the Trazodone helped but made her increasingly sedated and drowsy for a few hours the following morning. (Tr. at 143.) Dr. Nadeem Ahmed, M.D., noted on mental status exam that Claimant exhibited a flat affect; appeared tense, hypervigilant, paranoid, and markedly anxious, but was able to maintain her composure; slow and delayed speech; coherent thought processes; intact concentration and memory; and no psychosis or suicidal or homicidal ideations. (Id.) Dr. Ahmed

7

continued Claimant's Wellbutrin, Paxil, and Desyrel; started her on Klonopin; and scheduled her for counseling therapy for cognitive behavior and anxiety therapy for the social phobia. (Id.) On August 22, 2002, Claimant reported that the Klonopin had helped with her anxiety and nervousness. (Tr. at 143.)

On September 6, 2002, Claimant reported that she was concerned about how she would care for herself if the man she cared for died. (Tr. at 142.) Dr. Ahmed noted that her speech was slow, relevant, and non-pressured, and that her thought process was coherent. (Tr. at 140.) He continued the same medications. (Id.) On October 17, 2002, Claimant reported that she was "doing fairly well," and denied any medication side effects. (Id.) She indicated that someone had drowned, which upset and stressed her, but that she was able to recuperate. (Id.) On October 31, 2002, Claimant reported that she had adopted a dog and was making progress toward being assertive. (Tr. at 134.) Claimant reported on November 18, 2002, that she was denied social security, which resulted in panic attacks. (Tr. at 132.) However, she had applied to a part-time job at a fast food restaurant, and was working toward her high school equivalency credits. (Tr. at 133.)

On November 1, 2002, Dr. James Binder, M.D., completed a form Psychiatric Review Technique, on which he opined that Claimant's depression and anxiety were non-severe impairments. (Tr. at 114-28.) He concluded that Claimant's mental impairments resulted in mild restrictions of activities of daily living and in maintaining social functioning, concentration, persistence, and pace, and no repeated episodes of decompensation of extended duration. (Tr. at 124.)

Claimant returned to Dr. Ahmed for psychiatric follow-up on February 27, 2003, at which time she reported continued anxiety, nervousness, and depression. (Tr. at 192.) Claimant also reported that the medication was helpful, but not as much as before. (Id.) Dr. Ahmed noted that

Claimant maintained a calm and normal posture, exhibited slow and relevant but non-pressured speech, coherent thought process, and no psychosis. (Id.) He continued her medications without change. (Id.)

On March 24, 2003, Dr. Debra L. Lilly, Ph.D., completed a form Psychiatric Review Technique on which she opined that Claimant's major depression and panic disorder were non-severe impairments. (Tr. at 171-84.) She concluded that Claimant's mental impairments resulted in mild restrictions of activities of daily living and in maintaining social functioning, concentration, persistence, and pace, and no extended episodes of decompensation. (Tr. at 181.)

Claimant reported on May 22, 2003, that she was "doing fairly well," and denied any complaints or side effects from medications. (Tr. at 191.) Progress notes on June 4, 2003, indicated that Claimant was less anxious and depressed and that she crocheted doll outfits. (Tr. at 185-86.) By that time, Claimant had completed twenty-one credits toward her GED. (Tr. at 185.)

On September 4, 2003, Dr. Ahmed completed a form Medical Assessment of Ability to Do Work-Related Activities (Mental). (Tr. at 193-95.) Dr. Ahmed assessed as fair Claimant's following abilities: to follow work rules, relate to co-workers, use judgment, function independently, maintain attention and concentration, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and understand, remember, and carry out simple job instructions. (Tr. at 193-94.) He further assessed the following abilities as poor or none: to deal with the public, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed and complex job instructions. (Id.) He opined that Claimant had good ability to demonstrate reliability. (Tr. at 194.)

Dr. Ahmed diagnosed major depression, severe, recurrent, without psychotic features, and panic disorder without agoraphobia, on September 11, 2003. (Tr. at 200.) Nevertheless, Claimant

9

reported that she had been doing much better, though her speech continued to be slow, relevant, and non-pressured and her thought process was coherent. (Id.) On December 11, 2003, Claimant reported that she was more depressed around the holidays and missed her mother. (Tr. at 199.) She stated that the Klonopin helped her anxiety and nervousness, and that she slept well with the Desyrel. (Id.) Emily Mounts, Physician's Assistant, increased her Paxil and Wellbutrin, and continued her other medications. (Id.) Claimant reported on February 5, 2004, that she was "sleeping okay" and that her nerves were stable. (Tr. at 198.) Claimant had no suicidal or homicidal ideations. (Id.) On March 4, 2004, Claimant reported that she was depressed and that she was going through "a lot," and noted that her roommate was scheduled to have open-heart surgery. (Tr. at 197.) She denied suicidal ideation, hallucinations, or delusions. (Id.) Claimant's Wellbutrin was discontinued because it made her sick, and her Paxil was increased. (Id.) On April 1, 2004, Dr. M. K. Hasan, M.D., noted that Claimant continued to do fair, and that she reported that her anxiety and depression were under much better control. (Tr. at 196.) Dr. Hasan noted that Claimant was alert and oriented, without evidence of psychosis or thought disturbances, and that she had no suicidal or homicidal ideation. (Id.)

On June 24, 2004, Dr. Hasan diagnosed major depression recurrent, in partial remission with treatment, and history of panic disorder without agoraphobia. (Tr. at 207.) On September 23, 2004, Dr. Hasan noted however, that Claimant continued "to do rather poorly." (Tr. at 205.) He noted that Claimant had gained some weight from the medications and exhibited some psychomotor retardation. (Id.) Claimant reported that she was having a hard time and that she lacked energy. (Id.) Dr. Hasan decreased the Klonopin, which may have been sedating her, as well as the Paxil, and recommended church and calisthenics. (Id.) On December 2, 2004, Dr. Hasan noted that Claimant continued to do fair and diagnosed panic anxiety disorder and a history of depression. (Id.) On

10

mental status exam, Dr. Hasan observed that Claimant was alert and oriented, that her mood was "much more stable," and that there was no evidence of psychosis or thought disorder. (Id.)

On November 10, 2004, Claimant underwent a neurological examination by Kris G. Murthy, M.D., at the referral of her treating physician, Dr. Jee Lee, M.D., of Gauley Bridge Health Center, for evaluation of memory disturbance. (Tr. at 230-34.) Claimant presented with a three to five month history of memory disturbance, with recent difficulty remembering names. (Tr. at 230.) She reported that she often forgot appointments and misplaced objects in a known environment, but could remember family member names. (Id.) She indicated that at times, she was confused, but denied hallucinations and difficulties with activities of daily living and self-care. (Id.) She further reported that she was somewhat anxious and depressed and experienced headaches nearly every day. (Id.) Mental status and motor examinations were normal. (Tr. at 231-32.) Claimant was alert and oriented, had clear speech, and her language function, as well as her immediate, present, and remote memories were intact. (Tr. at 231.) Dr. Murthy diagnosed depression, chronic headaches, dizziness, and paresthesia in the lower extremities. (Tr. at 232.) He opined that historically, "the memory disturbance could be pseudodementia in this case secondary to underlying depression." (Id.)

On March 15, 2005, Scott Spaulding, M.A., conducted a consultative psychological evaluation at the request of the State Agency. (Tr. at 235-45.) Mental status examination revealed relevant and coherent speech of low volume and rate, solemn mood, logical and sequential stream of thought that was coherent, no auditory or visual hallucinations or obsessive-compulsive traits or phobias, normal psychomotor activity, moderately deficient judgment, and normal insight, remote and immediate memory, social functioning, persistence, and pace. (Tr. at 238-39, 241.) Claimant's delayed memory was moderately deficient and her concentration was mildly deficient. (Tr. at 239.) Psychological testing revealed a verbal and performance IQ of 86 and a full scale IQ of 85. (Id.) The

WRAT-III testing revealed that Claimant performed reading at the fourth grade level, spelling at a second grade level, and arithmetic at the fifth grade level. (Tr. at 240.) Mr. Spaulding diagnosed major depressive disorder, recurrent, in partial remission per history; generalized anxiety disorder; panic attacks without agoraphobia, per history; and learning disorder not otherwise specified, provisional. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's subjective complaints, (2) evaluating the opinions of Claimant's treating physician, and (3) failing to consider Claimant's impairments in combination. (Document No. 16 at 9-12.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 17 at 7-11.)

1. Pain and Credibility.

Claimant first alleges that the medical evidence corroborates Claimant's testimony regarding her non-exertional impairments, and "clearly reflects" that Claimant is disabled, contrary to the ALJ's pain and credibility assessment. (Document No. 16 at 9-10.) The Commissioner asserts that the ALJ properly found that Claimant's complaints of disabling anxiety, depression, and nerves were not supported by the objective medical evidence. (Document No. 17 at 7.) The Commissioner further asserts that the ALJ's credibility finding is supported by Claimant's activities of daily living. (Id. at 7-9.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2004); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If

such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2004).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable psychiatric impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. at 15.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 15-16.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 15.)

The Court finds that the ALJ properly considered the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), in evaluating Claimant's pain and credibility. The ALJ acknowledged Claimant's complaints of crying spells, difficulty sleeping, blackouts, depression,

15

anxiety, and her legs giving way. (Tr. at 15, 258-59, 261-62.) The ALJ thus noted the nature and location of Claimant's impairments, and further noted that Claimant's mental conditions were treated with medication and counseling. (Tr. at 13-16.) As noted above, progress notes demonstrated that Claimant responded to medication and had no reported side effects, except for occasional drowsiness, which resulted in a change in dosage. Mental status exams from Drs. Hasan and Ahmed consistently revealed that Claimant had normal speech and thought process, with no psychosis, suicidal or homicidal ideation, and hallucinations or delusions. The mental status examinations conducted by Dr. Murthy and Mr. Spaulding essentially were normal, revealing no significant limitations.

Additionally, the ALJ determined that Claimant's reported activities of daily living were inconsistent with a finding of disability and were consistent with the performance of at least unskilled work. (Tr. at 15-16.) On a form Activities of Daily Living, dated September 9, 2002, Claimant reported that she cared for her personal needs and grooming, prepared simple meals, did laundry, dusted, washed dishes, and mended clothes, all without assistance. (Tr. at 99-100.) She further reported that she shopped for food and medication, she drove, watched television, and sewed. (Tr. at 100-03.) Furthermore, Claimant cared for an eighty-four year old man in exchange for room, board, and $150. (Tr. at 149.) She also cared for a dog, worked toward earning her Generalized Equivalency Diploma ("GED"), and applied for part-time work at a fast food restaurant. (Tr. at 133-34.)

Accordingly, based on the foregoing, it is clear that the ALJ properly considered the factors under 20 C.F.R. § 416.929(c)(4), in finding Claimant not entirely credible. Accordingly, the Court finds that the ALJ properly considered Claimant's subjective allegations and that her pain and credibility assessment is supported by substantial evidence.

16

2. <u>Treating Physician's Opinion</u>.

Claimant next alleges that the ALJ failed to give proper weight to the opinion of Claimant's treating physicians. (Document No. 16 at 10-11.) In support of her claim, Claimant asserts as follows:

> Here, the record clearly shows that the physicians have determined that the plaintiff is in fact disabled and they should not be able to disregard testimony of the physicians in this matter. These physicians are trained and are highly skilled in their profession. The ALJ and the Commissioner are not doctors, they have not treated the plaintiff, they do not know the condition of the plaintiff and how it renders her disabled. The ALJ's decision is wrong.

(<u>Id.</u>) The Commissioner asserts that Claimant has failed to explain how her treating physician's opinion is consistent with the evidence of record. (Document No. 17 at 9.) The Commissioner asserts that Dr. Ahmed's treatment notes do not support his extensive limitations, but indicated that Claimant was doing well, denied complaints or side effects from the medications, and reported that the medications helped with her symptoms. (<u>Id.</u> at 9-10.) Furthermore, the Commissioner asserts that "the treatment notes revealed that [Claimant] continued to perform activities of daily living that do not support a finding of 'fair' to 'poor' functional limitations." (<u>Id.</u> at 10.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands

17

of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§

18

404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." <u>See</u> 20 C.F.R. §§ 404.1545 and 416.946 (2004). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. <u>See</u> Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." <u>Id.</u> SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." <u>Id.</u> at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2004). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons

in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2004). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic

20

techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

As discussed above, Dr. Ahmed, Claimant's treating physician, assessed several "fair" and "poor" functional limitations regarding Claimant's mental ability to perform certain work-related activities. (Tr. at 193-95.) In his decision, the ALJ summarized and considered Dr. Ahmed's opinion, but found that it was neither persuasive nor entitled to controlling weight. (Tr. at 13-14.) In so finding, the ALJ noted that Dr. Ahmed's conclusions were inconsistent with therapy records, which indicated that Claimant did well with treatment and was independent with daily activities. (Tr. at 14.) As previously noted, Dr. Ahmed's treatment notes indicated that Claimant improved with medication and referenced many of her self-reports that she was doing better with medication. There is no evidence of abnormal mental status examinations, and it is clear that Claimant had relevant speech and though process, and denied suicidal or homicidal ideations, as well as hallucinations or delusions. Additionally, as the Commissioner points out, Dr. Ahmed's opinion is inconsistent with

Claimant's reported activities of daily living, which are outlined above. Furthermore, Dr. Ahmed's opinions were inconsistent with the opinions of the state agency physicians who opined that Claimant's mental impairments were non-severe impairments. Accordingly, the Court finds that the ALJ's decision that Dr. Ahmed's opinion was not entitled controlling weight is supported by substantial evidence of record.

3. Combination of Impairments.

Finally, Claimant alleges that the ALJ failed to consider the combination of Claimant's impairments. (Document No. 16 at 11-12.) Specifically, Claimant asserts as follows:

> What the ALJ did in this situation is that he singly took each of the plaintiff's elements and fractionalized them and also considered them in isolation. What he should have done was considered them in combination to determine the impact that they would have on her ability to perform substantial work activities. He further failed to take into consideration the accumulative effect that her various impairments would have on her ability to work. He failed to analyze this. He considered each of her elements in isolation as opposed to considering them in combination to determine the degree of severity and whether, together, all of these elements would impair the plaintiff's ability to engage in substantial gainful activity. It is obvious in this case that this is exactly what the ALJ has done. He has failed to consider the combination of the plaintiff's impairments and how they render her disabled and unable to perform substantial gainful activity.

(Id.) The Commissioner asserts that the "ALJ considered the effect of the combination of [Claimant's] impairment[s] throughout the sequential evaluation process." (Document No. 17 at 10.) Specifically, the Commissioner notes that after finding Claimant's severe impairments at step two of the sequential analysis, the ALJ expressly stated at step three that she did not have a combination of impairments that met or equaled a listed impairment. (Id.) The Commissioner further notes that the ALJ then considered the combined effects of her impairments in assessing Claimant's RFC and found that her alleged dizziness and leg problems may limit her to medium work. (Id. at 10-11.) In considering her mental impairments, the ALJ concluded that she was limited to unskilled work. (Id.

at 11.) The Commissioner further asserts that "[w]hen the ALJ separately discusses, as in the instant matter, the claimant's impairments, subjective complaints of pain, and her daily level of activities, and finds that her impairments do not prevent her from working, the ALJ has properly considered the impairments in combination." (Id.)

The Social Security Regulations provide as follows:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. §§ 404.1523; 416.923 (2004). When there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of her impairments in combination and "fractionalized" the impairments. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 13, 15.) The ALJ then discussed Claimant's impairments, finding that her affective disorder, anxiety disorder, and alleged dizziness, were severe impairments. (Tr. at 14.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment of combination of impairments that meets or medically

23

equals an impairment listed in Appendix 1, Subpart P, Regulations Nos. 4." (Tr. at 17, Finding No. 3.) Further, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, limiting her to medium, unskilled work. (Tr. at 15.) Additionally, the ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 12, 15, 17.) In his pain and credibility assessment, the ALJ discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling. (Tr. at 15-16.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Claimant's argument is therefore, without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 16.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge

24